UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACKWELL SANDERS PEPER MARTIN, LLP, a Missouri limited liability partnership,<br>　　750 17TH Street NW Suite 1000<br>　　Washington DC 20006<br><br>and<br><br>ERNEST M. FLEISCHER,<br>　　4801 Main Street, Suite 1000<br>　　Kansas City, Missouri 64112<br><br>　　　　Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Benj. Franklin Federal Savings and Loan Association, Portland, Oregon, 550 17th Street N.W. Washington, DC 20429<br><br>　　　　Defendant. | CASE NUMBER  1:06CV01273<br><br>JUDGE: Emmet G. Sullivan<br><br>DECK TYPE: Administrative Agency Review<br><br>DATE STAMP: 07/18/2006 |

## COMPLAINT

Plaintiffs Blackwell Sanders Peper Martin, LLP ("Blackwell") and Ernest M. Fleischer ("Mr. Fleischer"), collectively "Plaintiffs," for their Complaint against the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for Benj. Franklin Savings and Loan Association, Portland, Oregon ("Benj. Franklin"), hereby state as follows:

### Jurisdiction, Parties and Venue

1.　　This Court has jurisdiction over this matter pursuant to 12 U.S.C. § 1821(d)(6) to review *de novo* Plaintiffs' claim ("Claim") submitted to the FDIC pursuant to 12 U.S.C. § 1821(d)(5).　Plaintiffs' Claim seeks fair and reasonable attorney's fees for both (i) providing legal services to the Benj. Franklin receivership and to the Benj. Franklin shareholders in

connection with a favorable and substantial federal income tax settlement resulting in the preservation of a common fund and (ii) the risks undertaken by Plaintiffs that the payment of any compensation whatsoever was wholly contingent on a successful outcome.

2.    Blackwell is a Missouri limited liability partnership with it principal office in Kansas City, Missouri.

3.    Mr. Fleischer is an attorney at law and of counsel with Blackwell, with his principal residence in Mission Hills, Kansas.

4.    The FDIC is an independent agency of the United States government with its principal office in Washington, D.C.  The FDIC assumed responsibility as Receiver of Benj. Franklin, effective January 1, 1996, when it succeeded to the rights and obligations of the Resolution Trust Corporation ("RTC") in connection with those institutions for which the RTC was then the receiver.

5.    Plaintiffs have complied with all of the relevant procedural mandates prescribed by 12 U.S.C. § 1821, including obtaining an initial determination of the Claim by the FDIC.  *See* Ex. 1.

6.    This Court may properly exercise personal jurisdiction over the Defendant because the Defendant resides and maintains its primary place of business in the District of Columbia, and because its denial of the Claim took place in this judicial district.

7.    Venue is proper in this District pursuant to 12 U.S.C. § 1821(d)(6), as well as 28 U.S.C. § 1391(b)(1)-(2), because the FDIC resides in this judicial district and a substantial portion of the events and/or omissions giving rise to the Claim occurred in this judicial district.

### Facts

8.    In 2002, the Internal Revenue Service ("IRS") filed a proof of claim ("IRS Claim) with the FDIC in the Benj. Franklin Receivership, asserting tax liability of approximately

2

$1.2 Billion in federal income tax on earnings received post-receivership. *See* United States v. FDIC, No. 1:02CV1427.

9.     If upheld, the IRS Claim would have exhausted the assets of the Benj. Franklin receivership estate, depriving the Benj. Franklin shareholders of any recovery of any amount then in the receivership estate, because the receivership estate at that time was less than 10% of the IRS Claim.

10.     The issues involved in challenging the IRS Claim were complex and highly specialized. The FDIC, as Receiver of Benj. Franklin, was proposing to pay the funds in the receivership estate to the IRS in partial satisfaction of the IRS Claim. If the FDIC had made such payment, the Benj. Franklin shareholders might not have standing to prosecute a refund claim because the FDIC as the Receiver and not the Benj. Franklin shareholders was the "taxpayer". Any claim by the Benj. Franklin shareholders against the FDIC for paying the amount to the IRS would probably also fail because the FDIC's paying such amount would probably fall within the "discretionary function" exception to government liability under the Federal Torts Claims Act. Finally, because (i) tax liability for many years was involved in the IRS Claim and (ii) various disputed legal theories and facts could determine varying amounts of liability for many of those years, such payment from the FDIC to the IRS would probably not have met the Internal Revenue Code Section 1346(a)(1) jurisdictional requirement of "full payment of the assessment before an income tax refund suit can be maintained in the Federal District Court", as explained by Mr. Chief Justice Warren in *Flora v. U. S.*, 362 U.S. 145, in any litigation brought either by the FDIC as receiver of Benj. Franklin or by the Benj. Franklin shareholders.

11. Don S. Willner ("Mr. Willner"), as lead counsel for Benj. Franklin's shareholders, recognized the complexity of the matter and hired Plaintiffs because of Mr. Fleischer's skill and experience defending against claims such as the IRS had asserted in the Benj. Franklin receivership.

12. Mr. Willner explained to Mr. Fleischer (i) that the shareholders were seeking tax counsel who was willing to provide services on a contingent fee basis, and (ii) that because of the novel and complex issues to be decided, a federal judge would determine a "fair" contingent fee amount if a positive outcome for the Benj. Franklin shareholders was achieved. Accordingly, if that positive outcome was achieved, Plaintiffs' fee award would be based upon that outcome to compensate for the risks inherent in a contingent fee arrangement.

13. The services provided by the Plaintiffs significantly contributed to the successful retention of more than $42 Million for the Benj. Franklin receivership estate and the Benj. Franklin shareholders because of arguments advanced by Plaintiffs that resulted in the reduction in the tax claim from $1.2 Billion to $50 Million.

14. Plaintiffs were eminently qualified to provide advice on complex issues of taxation, particularly Mr. Fleischer, who is recognized as one of the nation's top lawyers in tax litigation. Consistent with its strong reputation in the legal community, Plaintiffs provided expert tax analysis and advice as well as expert skill in negotiating all of the receivership's tax issues with the IRS and the Department of Justice's Tax Division.

15. Mr. Fleischer was instrumental in analyzing the IRS's tax claim and developing defenses against it.

16.    Plaintiffs exposed themselves to substantial financial risk by agreeing to provide services with only the possibility of recovering any fee whatsoever solely if a successful outcome was achieved.

17.    The novel and complex nature of the issues presented by Benj. Franklin's dispute with the IRS increased the uncertainty of the outcome of the litigation. The IRS based its tax claim on the assertion that Federal Financial Assistance ("FFA") paid to the Benj. Franklin receivership should be treated as taxable income. Because very few FDIC receiverships have ever maintained a positive balance sheet after receiving FFA, as the Benj. Franklin receivership did, the application of a federal income tax to FFA created a novel issue of law. In fact, no reported decision or published scholarly article had ever addressed this issue. However, Mr. Fleischer was one of a handful of lawyers who had dealt with, and continues to deal with, a similar matter in another case.

18.    To date, Plaintiffs have been compensated for substantially all of their customary hourly rates, with the FDIC summarily rejecting their request that the fee award be enhanced to account for Plaintiffs undertaking the representation with the risk that they would not receive any compensation whatsoever unless their efforts contributed to a significant benefit for the Benj. Franklin receivership and the Benj. Franklin shareholders.

19.    Mr. Willner included Mr. Fleischer's listing of the services performed on behalf of the Benj. Franklin receivership and the Benj. Franklin shareholders by date and description computed at Plaintiffs' customary hourly fees in a proof of claim filed by Mr. Willner in accordance with the instructions received by him from the FDIC. On March 3, 2006, at the request of Richard Gill ("Mr. Gill") of the FDIC, Mr. Fleischer sent Mr. Gill a facsimile message in which Mr. Fleischer set forth the factual background of the contingency fee arrangement

described above, including therein his understanding that "a 'fair' contingent fee amount would be determined by a Federal judge".

20.    In a letter dated May 19, 2006, Glenn Glinsmann ("Mr. Glinsmann") of the FDIC Claims Department stated that it "has allowed the claim of Ernest Fleischer in the amount of $89,465.34, that includes $1,408.34 in expenses". The amount of fees allowed was at Plaintiffs' standard hourly rates. In that letter, the FDIC advised that "an appropriate enhancement is not appropriate in this case because this would not constitute reasonable attorney's fees". That letter contains no discussion whatsoever of compensation for the risks inherent in the contingent fee arrangement for the services provided. In a letter dated June 6, 2006, to Mr. Fleischer, Mr. Glinsmann stated "Your claim has been reviewed, and the Receiver has determined that is [*sic*] should be partially allowed. Enclosed you will find a check in the amount of $89,465.34." That letter likewise contains no discussion whatsoever of compensation for the risks inherent in the wholly contingent fee arrangement for the services which Plaintiffs provided.

21.    Under 12 U.S.C. § 1821(d)(6)(A)(ii), the FDIC's denial of Plaintiffs' full claim entitles them to seek a *de novo* determination of the claim before this Court.

**FIRST CLAIM FOR RELIEF**
**Determination of Claim for Reasonable Attorneys' Fees under 12 U.S.C. § 1821(d)(4)-(5)**

22.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-21 of this Complaint as if fully set forth herein.

23.    Plaintiffs have complied with all of the relevant procedural mandates prescribed by 12 U.S.C. § 1821, including obtaining an administrative determination of the Claim in the first instance. *See* Ex. 1. Accordingly, Plaintiffs are entitled to a *de novo* judicial determination of the Claim.

24.    By all applicable standards, the fees sought by Plaintiffs are both reasonable and fair. Thus, awarding the requested relief will not create a windfall for Plaintiffs.

25.    While working without compensation, and with no assurance that they would ever recover any amount for the services provided by them, Plaintiffs expended vast resources, applied unique expertise to evaluate novel and unusually technical issues of law and fact, and ultimately helped to settle a $1.2 billion tax claim for $50 million -- thereby preserving more than a $42 million receivership surplus.

26.    As a direct result of Mr. Fleischer's efforts, after the remaining administrative expenses and claims are paid by the FDIC-Receiver, tens of millions of dollars will be available for distribution to the shareholders of Benj. Franklin.

27.    Mr. Fleischer's standard hourly rates were at all relevant times consistent with the prevailing non-contingent rates for attorneys offering services of a similar type and quality, as demonstrated by the FDIC's allowance of said fees. The FDIC spent six months reviewing Plaintiffs' fee request and invoices before rendering its recent determination. The FDIC ultimately concluded that Mr. Fleischer's standard hourly rates were acceptable and that the time expended benefited the estate. Thus, the FDIC determined that the Benj. Franklin receivership should compensate Plaintiffs for virtually all of their time.

28.    As such, the success fee sought by Plaintiffs constitutes no more than the amount of compensation that was adequate to attract competent counsel to accept the case at issue on solely a contingent fee.

29.    The fee agreement between Mr. Fleischer and Benj. Franklin and its shareholders was expressly premised on the understanding that Plaintiffs' fee would be wholly contingent on a

successful outcome for the Benj. Franklin shareholders in the IRS dispute and would be paid if, and only if, a successful outcome was achieved.

30.    Plaintiffs would not have undertaken a matter as complicated, demanding and risky as the IRS dispute if Plaintiffs were only offered payment of its ordinary and usual hourly rates wholly contingent on a successful outcome.

31.    To date, Plaintiffs have not been compensated in any way for the risk assumed by representing the Benj. Franklin receivership and Benj. Franklin shareholders on a contingency fee basis.

## SECOND CLAIM FOR RELIEF
### Quantum Meruit

32.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-32 of this Complaint as if fully set forth herein.

33.    All of the relevant facts, taken together, demonstrate that Plaintiffs deserve to recover a fair fee taking into consideration Plaintiffs' contributions made to the success of the outcome and the risk assumed by representing the Benj. Franklin receivership and the Benj. Franklin shareholders on a wholly contingency fee basis.

34.    Mr. Fleischer rendered valuable services to the Benj. Franklin's shareholders and the Benj. Franklin receivership.    Plaintiffs committed extensive resources, applied unique expertise to evaluating novel and technical issues of law and fact, and they made a significant contribution to settling a $1.2 billion tax claim for $50 million -- thereby preserving a $42 million receivership surplus.    As a result of Plaintiffs' efforts, tens of millions of dollars will be distributed to Benj. Franklin's shareholders that otherwise would likely have been paid to the IRS and never recovered from either the IRS or the FDIC.

35.    The FDIC, as Receiver, has benefited from Plaintiffs' services.    Accordingly, Plaintiffs seek payment in this action from the very party on whose behalf Plaintiffs have rendered valuable services.

36.    Benj. Franklin's shareholder plaintiffs and the Benj. Franklin receivership accepted, used and enjoyed Plaintiffs' services to effectuate a favorable resolution of their tax dispute with the IRS.

37.    Benj. Franklin's shareholder plaintiffs and the Benj. Franklin receivership were provided reasonable notice, both actual and constructive, that Plaintiffs expected to be paid for the valuable services rendered:

(i)    The fee agreement between Plaintiffs and the Benj. Franklin shareholder plaintiffs was expressly premised on the understanding that Plaintiffs would be paid a success-contingent fee if a successful outcome was achieved.

(ii)    Plaintiffs would not reasonably have undertaken complicated and demanding matters, involving novel legal issues, in return for, under the best case scenario of a successful outcome, only the substantially delayed payment of standard professional fees.

(iii)    Plaintiffs are entitled to recover a fair fee based on the successful outcome of the IRS dispute and the risks inherent in a contingent fee arrangement.

(iv)    Over one-third of Benj. Franklin's shareholders have already approved a success fee.

WHEREFORE, for the reasons stated, Plaintiffs pray that this Court award a contingent

fee that is at least 5% of the amount retained by the Benj. Franklin estate and its shareholders

following settlement of a claim by the IRS, less the amount already paid to Mr. Fleischer by the

FDIC Receiver, and any such further relief as the Court deems just and proper.

Dated July 18, 2006                          Respectfully submitted,

                                             William F. Demarest, Jr. (D.C. Bar No. 266312)
                                             Blackwell Sanders Peper Martin LLP
                                             750 17th Street NW, Suite 1000
                                             Washington, D.C. 20006-3901
                                             (202) 378-2300

                                             and

                                             James Borthwick      MO #19722
                                             Nancy S. Jochens      MO #49022
                                             4801 Main Street, Suite 1000
                                             Kansas City, Missouri  64112
                                             (816) 983-8000
                                             (816) 983-8080 (Facsimile)

                                             *Attorneys for Plaintiffs*