UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP,<br><br>and<br><br>WILLNER & ASSOCIATES,<br><br>and<br><br>BLACKWELL SANDERS PEPER MARTIN<br>and<br>ERNEST M. FLEISCHER,<br><br>    Consolidated Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, AS RECEIVER FOR<br>THE BENJ. FRANKLIN FS&LA,<br><br>    Defendant. | Civil Case No. 06-1120 (EGS)<br><br>[Consolidated with No. 06-1227<br>(EGS) and No. 06-1273 (EGS)] |

**PLAINTIFF WINSTON & STRAWN LLP'S MOTION FOR SUMMARY
JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rules 7 and 56.1, Plaintiff Winston & Strawn LLP ("Winston & Strawn") moves for summary judgment on its claim for an attorney's fee award of $574,938. Such an award would be paid out of the $42 million common fund created, as a result of the law firm's effort, for the benefit of the Federal Deposit Insurance Corporation ("FDIC-Receiver") in its capacity as receiver for the seized Benj. Franklin Federal Savings & Loan Association ("Benj. Franklin").[1]

---

[1] The requested fee award of $574,938 reflects two times Winston & Strawn's fees at the firm's standard hourly billing rates during the pertinent period ($582,604 x 2), minus: (1) $189,457 paid to Winston & Strawn by Benj. Franklin shareholders; and (2) $400,813 paid to Winston & Strawn by the FDIC-Receiver.

## INTRODUCTION

There is no dispute that Winston & Strawn is entitled to a reasonable attorney's fee in connection with its successful efforts to settle a claim by the Internal Revenue Service ("IRS") and resulting lawsuit ("Tax Case") that threatened to deplete the Benj. Franklin receivership surplus.[2] Instead, the sole disagreement as to Winston & Strawn concerns whether a total fee award equal to twice the firm's hourly billing rates would be reasonable. As a matter of law, such a fee premium is warranted here – and, in fact, is extremely conservative – given that the firm's efforts on behalf of Benj. Franklin shareholders created a common fund of $42 million that benefited the shareholders as a whole.

Binding precedent from the D.C. Circuit holds that attorneys who recover a common fund on behalf of a class are entitled to recover a percentage of the fund created as a result of the attorneys' efforts, and that percentage generally falls within the range of 20-30%. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). Winston & Strawn's request for a total attorney's fee of $1,165,208 is only 2.8% of the $42 million fund it helped create. There can be no dispute, therefore, that such a nominal percentage-of-the-fund fee award is authorized by governing authority. In fact, *Swedish Hospital* expressly rejected the position advanced by FDIC-Receiver here that the attorney's fee in a common fund case "should be limited to the product of the hours reasonably spent by the attorneys and their reasonable hourly rates (the 'lodestar')[.]" *Id.* at 1263, 1265-71.

The undisputed facts further demonstrate that a fee award to Winston & Strawn of 2.8% of the common fund would be appropriate in this case. First, Benj. Franklin shareholders holding a majority of the outstanding shares have consented to Winston & Strawn's fee petition

---

[2] This Court presided over the Tax Case, entitled *United States v. FDIC*, Civil Action No. 02-1427.

2

as submitted. Second, Winston & Strawn agreed to represent Benj. Franklin and its shareholders at one-third of its standard hourly rates in exchange for a promise that the law firm would receive a success fee if and when the Tax Case settled on favorable grounds. Finally, as FDIC-Receiver admits in its Answer, there is no dispute that Winston & Strawn "rendered valuable services to Benj. Franklin's shareholders and the Benj. Franklin receivership" – legal services that resulted in the preservation of a $42 million common fund in favor of Benj. Franklin shareholders. Facts, Ex. 1 (Ans. ¶ 44).

## BACKGROUND[3]

Winston & Strawn is an international law firm that, beginning in 1990, represented Benj. Franklin and its shareholders in a shareholder derivative action seeking breach of contract damages from the United States in the United States Court of Federal Claims ("CFC Case").[4] During the course of that litigation, counsel discovered that the IRS had asserted a novel claim against the Benj. Franklin receivership surplus for about $1.2 billion in alleged taxes and penalties, a claim that ultimately resulted in the United States bringing the Tax Case against the Benj. Franklin receivership.

The IRS claim well-exceeded the Benj. Franklin receivership surplus as well as all damages sought by Benj. Franklin in the CFC Case. Faced with the prospect of losing their entire investment in the institution, the Benj. Franklin shareholders – who are the real parties in interest since the institution is defunct and any receivership surplus will be distributed to its shareholders – directed Winston & Strawn to marshal its expert tax and litigation resources to analyze the legitimacy of the IRS claim. Facts ¶¶ 13-14.

---

[3] Winston & Strawn refers the Court to its Statement of Uncontested Material Facts in Support of Motion for Summary Judgment ("Facts"), filed contemporaneously with this brief, for a more detailed recitation of the pertinent facts.

[4] In late 2006, Benj. Franklin received a judgment for about $52 million in the CFC Case. Facts ¶ 8, Ex. 2 (CFC Reconsideration Decision). This judgment is subject to a possible appeal.

Winston & Strawn never represented FDIC-Receiver in connection with the IRS claim or the resulting Tax Case. The firm, however, entered into an agreement with C. Robert Suess, the lead plaintiff and Benj. Franklin shareholder representative in the CFC Case, to work with FDIC-Receiver and others in an effort to negotiate a settlement with the IRS.[5] To limit the outlay of cash from Benj. Franklin's shareholders, Winston & Strawn agreed to provide such legal services at a greatly reduced rate of $125 per hour (a two-thirds discount). In exchange, the Benj. Franklin shareholders agreed to support Winston & Strawn's request for a success fee of two-times the firm's normal hourly rates if the settlement negotiations resulted in a favorable resolution of the Tax Case. Such a success fee would be paid out of any receivership surplus. Consequently, this agreement exposed Winston & Strawn to substantial financial risk because the firm may not have been entitled to recover the difference between its substantially reduced hourly rate and its customary fees unless and until the firm achieved a successful outcome in the Tax Case that resulted in a receivership surplus. Facts ¶¶ 15-16, 20.

Winston & Strawn devoted more than 1,400 attorney hours in an effort to negotiate the unique and complicated tax issues raised in the Tax Case. For example, Winston & Strawn conducted multiple depositions, researched and prepared numerous memoranda analyzing complex tax issues, and subpoenaed and reviewed thousands of pages of tax returns and other tax related documents. The firm also prepared numerous complex tax schedules, reviewed the IRS's analyses and schedules, and took the lead in settlement negotiations with the IRS. Facts ¶ 18, 26.

After nearly two years of settlement negotiations with the IRS, the matter was settled for $50 million, or only 4.2% of the original $1.2 billion IRS claim. This settlement allowed Benj. Franklin shareholders to keep $42 million of the $92 million surplus in the Benj. Franklin

---

[5] Winston & Strawn worked as part of a team that included not only FDIC-Receiver, but also Willner & Associates, Blackwell Sanders Peper Martin (including Ernest Fleischer) and Spriggs and Hollingsworth.

receivership, and potentially to receive tens of millions of additional dollars as a result of the CFC Case. Facts ¶ 22.

It is undisputed that Winston & Strawn's efforts contributed substantially to the creation of this common fund in favor of Benj. Franklin shareholders. As the FDIC attorney who reviewed and approved the law firm's fee petition testified, Winston & Strawn "did the most heavy lifting . . . with respect to the tax matters." Facts ¶ 19, Ex. 3 (Gill Dep. at 70:18-71:1). FDIC-Receiver thus approved all but 15.5 of 1,457 hours devoted by Winston & Strawn attorneys to the Tax Case as reasonable and allowed Winston & Strawn's "claim for recovery of attorney's fees in the amount of $400,812.75," an amount sufficient to compensate the firm at its "standard hourly billing rates, less any reimbursements from" Benj. Franklin shareholders. Facts ¶ 31, 32; Ex. 4 (FDIC Letter). Nevertheless, FDIC-Receiver summarily determined that the requested fee "enhancement that would result in double [the firm's] standard billing rates is not appropriate in this case because this would not constitute reasonable attorney's fees." Facts ¶ 33.

## STANDARD OF REVIEW

The FDIC-Receiver rejected Winston & Strawn's request for a success fee on the ground that such a fee would be unreasonable. That rejection, however, is entitled to no deference because this Court reviews the partial denial of Winston & Strawn's fee petition under the *de novo* standard of review. *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995); 12 U.S.C. § 1821(d)(6). To obtain summary judgment, Winston & Strawn must show both the absence of genuine issues of material fact and a legal entitlement to judgment. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## ARGUMENT

The Court "enjoys substantial discretion in making reasonable fee determinations." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (citing *Hensley v.*

5

*Eckerhart*, 461 U.S. 424, 437 (1983)). This Court should exercise such discretion in this case to award Winston & Strawn a relatively modest success fee of $574,938 based on the firm's effort to preserve a $42 million common fund in favor of all Benj. Franklin shareholders.

I. **WINSTON & STRAWN IS ENTITLED TO A REASONABLE ATTORNEY'S FEE CONSISTENT WITH THE PERCENTAGE-OF-THE-FUND METHOD**

   A.   *There Is No Dispute That Winston & Strawn Is Entitled To A Reasonable Attorney's Fee Based On Its Efforts In Creating A Common Fund For The Benefit Of Benj. Franklin Shareholders*

The FDIC concedes that Winston & Strawn is entitled to a reasonable attorney's fee in connection with its efforts to resolve favorably the Tax Case. Facts ¶ 31, Ex. 4 (FDIC Letter) (allowing part of Winston & Strawn's claim for reasonable attorney's fees). This concession is not based on any written agreement with FDIC-Receiver pertaining to attorney's fees because Winston & Strawn and FDIC-Receiver did not share an attorney-client relationship or otherwise sign a fee agreement. Instead, a reasonable attorney's fee award is warranted here because Winston & Strawn's efforts resulted in a common fund that benefits Benj. Franklin's shareholders as a whole.

The common fund doctrine is a well-known exception to the general rule that parties bear their own attorneys' fees absent a fee-shifting statute. *Swedish Hosp.*, 1 F.3d at 1265; *see also Passtou, Inc. v. Spring Valley Ctr.*, 501 A.2d 8, 12 (D.C. Cir. 1985) ("The common fund or [common] benefit exception to the American Rule is fully recognized in the District of Columbia.").[6] As the D.C. Circuit explained in *Swedish Hospital*:

> [The common fund] doctrine allows a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses

---

[6] *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (Court described this procedure as a "judge-created exception" to the general rule that parties are expected to pay for their own counsel fees); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939) (fee award from fund generated is within "the historic equity jurisdiction of the federal courts").

6

> incurred, including counsel fees. *It is by now well established that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."*

*Swedish Hosp.*, 1 F.3d at 1265 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added)). From a policy perspective, the common fund exception prevents the unjust enrichment of those who benefited from the fund at the expense of those who made it available. *Id.* at 1265 ("[U]nless the costs of litigation were spread to the beneficiary of the fund they would be unjustly enriched by the attorney's efforts."); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."); *Democratic Cent. Comm. of the Dist. of Columbia v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1572 (D.C. Cir. 1993) ("The award of attorneys' fees in common fund cases is based on the historic power of equity[.]"); 7c Wright, Miller & Kane, *Federal Practice and Procedure*, § 841.

The common fund doctrine is not limited to formal class action and shareholder derivative litigation but, instead, applies whenever an attorney obtains a benefit on behalf of an organization or for similarly situated individuals:

> [W]hen . . . a [common] fund is for all practical purposes created for the benefit of others, the formalities of the litigation – the absence of an avowed class suit or the creation of a fund . . . hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (holding that when a litigant has recovered a "common fund for the benefit of persons other than himself" the litigant's attorney may recover "a reasonable attorney's fee from the fund as a whole"); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970)

(noting that the key to a common fund award was whether "petitioners have rendered a substantial service to the corporation and its shareholders"); Facts ¶ 24, Ex. 5 (Settlement Fairness Hearing Tr. at 50:19-25) (Court analogized Tax Case settlement to a class action settlement).

Here, there is no dispute that Winston & Strawn's efforts preserved the Benj. Franklin receivership surplus in the face of an IRS claim that threatened to wipe it out. Specifically, the negotiated Tax Case settlement reduced the IRS's claim on the receivership from $1.2 billion to merely $50 million, a substantial reduction that left the Benj. Franklin receivership with a $42 million surplus. Accordingly, FDIC-Receiver does not dispute that the creation of a $42 million common fund for the benefit of Benj. Franklin shareholders – a fund that would have been reduced to zero absent a successful resolution of the IRS claim – entitles Winston & Strawn to a reasonable attorney's fee as a matter of law. *See Consolidated Edison Co. of N.Y., Inc. v. Bodman*, 445 F.3d 438, 439, 451 (D.C. 2006) (holding that common fund doctrine "permits [payment of a reasonable attorney's fee to] a party who creates, *preserves* or increases the value of a fund") (emphasis added); *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986) ("the historic power of equity [can] permit the trustee of a fund or property, or a party *preserving* or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit.") (emphasis added).[7]

---

[7] *See Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (allowing fees to be paid from the common fund to an objector's attorney who successfully increased the amount of the fund for its beneficiaries); *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974) (objectors may receive attorneys' fees and expenses "where a proper showing has been made that the settlement was improved as a result of their efforts.")

8

### B. The Percentage-Of-The-Fund Method Is The Appropriate Mechanism For Determining Winston & Strawn's Reasonable Attorney's Fee Award

This common fund case is governed by the D.C. Circuit's decision in *Swedish Hospital*, which held "that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Swedish Hosp.*, 1 F.3d at 1271.

In *Swedish Hospital*, a number of hospitals brought a class action against the Department of Health and Human Services ("HHS") to challenge HHS's refusal to reimburse the hospitals for their photocopying costs incurred in connection with certain Medicare program requirements. HHS settled the class action for $27.8 million, thus creating a "common fund" for class members. The district court awarded class counsel 20% of the fund produced by their efforts.[8] Both sides appealed. The plaintiffs requested a larger attorney's fee award. HHS, in turn, argued that "class counsel's fee should be limited to the product of the hours reasonably spent by the attorneys and their reasonable hourly rates (the 'lodestar')[.]" *Id.* at 1263.

The D.C. Circuit rejected HHS's position that attorney's fees should be limited by the so-called lodestar/multiplier approach, which "shifted the emphasis from a fair percentage of recovery to the value of the time expended by counsel." *Id.* at 1266-71. In affirming the district court's fee award, the Court clarified "that percentage-of-the-fund is the proper method for calculating fees in a common fund case . . . because it is more efficient, easier to administer, and more closely reflects the marketplace" – *i.e.*, "the monetary amount of the victory is often the true measure of success, and therefore it is most efficient that it influence the fee award." *Id.* at 1269, 1271, 1272; *see also id.* at 1269 (holding that "a percentage-of-the-fund approach more accurately reflects the economics of litigation practice" because it "most closely approximates

---

[8] The district court found that class counsel's efforts resulted in only $10 million of the $27.8 million settlement because, among other reasons, a prior case established binding precedent that set the floor for a substantial settlement. *Swedish Hosp.*, 1 F.3d at 1264-65, 1272.

the manner in which attorneys are compensated in the marketplace for these types of cases"). The Court preferred the percentage-of-the-fund method over the lodestar approach because the former method "is less demanding of scarce judicial resources" in that it does not require "a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable." *Id.* at 1269-70; *see also id.* at 1270 ("[A] percentage-of-the-fund approach is less subjective than the lodestar approach; under the former, the court need not second-guess the judgment of counsel as to whether a task was reasonably undertaken or hours devoted to it reasonably expended.").

*Swedish Hospital* is directly on point. FDIC-Receiver rejected Winston & Strawn's fee petition on the ground that a fee "enhancement that would result in double [Winston & Strawn's] standard billing rates is not appropriate in this case because this would not constitute reasonable attorney's fees." Facts ¶ 33, Ex. 4 (FDIC Letter). Like HHS in *Swedish Hospital*, FDIC-Receiver thus took the position that any fee award that compensates Winston & Strawn over and above the lodestar – *i.e.*, the product of the hours reasonably spent by the attorneys and their reasonable hourly rates – necessarily would be unreasonable. The D.C. Circuit, however, flatly rejected this lodestar approach when it concluded "that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Id.* at 1271. FDIC-Receiver thus erred as a matter of law when it rejected Winston & Strawn's fee request to the extent it exceeded the lodestar.

## II.   WINSTON & STRAWN'S REQUEST FOR AN ATTORNEY'S FEE AWARD OF 2.8% OF THE FUND FALLS WELL WITHIN THE COURT'S DISCRETION TO AWARD REASONABLE ATTORNEY'S FEES UNDER THE PERCENTAGE-OF-THE-FUND METHOD

For the reasons discussed in Section I, this Court has discretion to award attorney's fees in this common fund case consistent with the percentage-of-the-fund method. As demonstrated

below, Winston & Strawn's modest request for a fee award equal to only 2.8% of the fund falls well within that discretion.

    **A.    *Winston & Strawn's Requested Fee Award Of Only 2.8% Of The Fund Necessarily Is Reasonable Because Most Attorney's Fee Awards Under The Percentage-Of-The-Fund Method Are 20-30% Of The Fund***

In *Swedish Hospital*, the D.C. Circuit held that the district court "acted within its discretion in setting the percentage of the fund at twenty percent." *Swedish Hosp.*, 1 F.3d at 1272. In fact, the Court explained that the 20% award was relatively conservative: "[A] review of similar cases reveals that a majority of common fund class action fee awards fall between twenty and thirty percent." *Id.* at 1272. Similarly, in *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396 (D.C. Cir. 1986), counsel requested, and was granted by the Court, attorney's fees equaling 25% of the common fund. *Id.* at 405.

These holdings by the D.C. Circuit are consistent with precedent from other jurisdictions holding that the typical benchmark for a success fee award in a common fund case is approximately 25% of the fund. *See, e.g., Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (district courts "across the nation have apparently eased into a practice of 'systematically' awarding fees in the 25% range," regardless of the type of case, benefits to the class, number of hours billed, size of the fund, size of the plaintiff's class, or any other relevant factor.); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (setting attorney fee benchmark of 25% of common fund); *Florin v. Nationsbank* of Ga., N.A., 60 F.3d 1245, 1249 (7th Cir. 1995) (benchmarks range between 20% and 30%); *In re Avon Prods., Inc. Sec. Litig.*, 1992 WL 349768 (S.D.N.Y.1992) (awarding 30% fee); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D.Cal.1989) (adopting policy of awarding 30% of the fund "absent extraordinary circumstances that suggest reasons to lower or increase the percentage"); *see also* Manual for Complex Litigation (Fourth) 14.121 n.488 (2004).

Winston & Strawn requests a total attorney's fee award of $1,165,208. Facts ¶ 34, Summary of Fee Petition Chart (Ex. 18). The common fund created (or preserved) in this case totals $42 million, the amount of the receivership surplus available to Benj. Franklin shareholders as a result of the Tax Case settlement. Consequently, Winston & Strawn requests an attorney's fee award of merely 2.8% of the fund. By way of comparison, applying the typical 25% benchmark to the $42 million receivership surplus would yield attorney's fees of approximately $10.75 million.

On its face, Winston & Strawn's requested attorney's fee of only 2.8% of the fund falls well within the discretion afforded this Court in awarding fee awards under the percentage-of-the-fund method. *Swedish Hosp.*, 1 F.3d at 1272 (holding that district court "acted within its discretion in setting the percentage of the fund at twenty percent").[9] In fact, the FDIC readily concedes, as it must, that "2.75% is lower than percentage-based contingency awards routinely sustained as reasonable by courts in this and other jurisdictions." Facts ¶ 34, Ex. 1 (FDIC Ans. ¶ 36). This should end the inquiry, and summary judgment should be entered in Winston & Strawn's favor on this basis alone.

> B.  *Winston & Strawn's Request For An Attorney's Fee Award Of Only 2.8% Of The Fund Is Appropriate Based On The Undisputed Facts*

To the extent the Court seeks further support for the requested fee award of 2.8% of the fund, the undisputed facts clearly support such an award. As demonstrated below, the requested fee award is consistent with the intent of Benj. Franklin's shareholders, Winston & Strawn's agreement to help facilitate a Tax Case settlement at a steep rate discount in return for a success fee, and the law firm's substantial role in negotiating that settlement.

---

[9] Although the other Plaintiffs also are requesting a percentage-of-the-fund fee award pertaining to the Tax Case, there is no basis to believe that the total percentage, assuming Winston & Strawn's share is only 2.8%, will even approach 20% since, as the FDIC-Receiver representative testified, Winston & Strawn "did the most heavy lifting . . . with respect to the tax matters." Facts ¶ 19, Ex. 3 (Gill Dep. at 70:18-71:1).

### 1. Benj. Franklin Shareholders Holding A Majority Of The Outstanding Shares Have Consented To The Requested Fee Award

The Benj. Franklin shareholders support Winston & Strawn's fee petition. In *Swedish Hospital*, the D.C. Circuit "noted supportive response of the class members to the attorneys' fee notice" and held that this factor, "though not decisive, is relevant to the District Court's reasonableness determination." *Swedish Hosp.*, 1 F.3d at 1271-72. The Court attached significance "to the fact that a large number of hospitals, in contravention of their economic interests, took the trouble to affirmatively support the proposed fee settlement." *Id.* at 1271. Similarly, C. Robert Suess, along with major shareholders Gary E. Hindes and Abe Siemens, all expressed their support for Winston & Strawn's fee petition – even though the fee award will be paid from their own pockets. *See* Facts ¶ 38, Ex. 1 (Ans. ¶ 47(iv)) (FDIC-Receiver admitted in its Answer that Winston & Strawn's fee petition was supported by "declarations of support from individuals holding over one-third of the outstanding shares of Benj. Franklin stock.").

Mr. Suess, the lead Plaintiff and shareholder representative in the CFC Case and one of the two largest Benj. Franklin shareholders, explained his intimate familiarity with Winston & Strawn's efforts in connection with the Tax Case and expressly supported the firm's "fee petition as submitted" on his own behalf and on behalf of a majority of Benj. Franklin shareholders:

> As indicated in their fee petition, Winston & Strawn LLP did all of the substantive research and analysis on the Federal Financial Assistance and other tax related issues that were the essence of the IRS action against the FDIC, and the settlement in that matter. Their work began in 1998, when they first uncovered the tax claim in the financial statements of the Benj. Franklin Receivership. Myself and the other named Plaintiffs in the Court of Federal Claims litigation asked Winston & Strawn LLP to fully investigate the tax claims, including subpoenaing records and taking depositions, and to analyze the factual record and the relevant legal issues for the shareholders. They spent a considerable amount of time doing this project in 1998 and 1999.

> Based on this work, they were given the same responsibility for analyzing the tax issues and defending the surplus against the tax claim filed by the IRS on July 17, 2002 in federal district court for the District of Columbia. It was based on the tremendous work product of Winston & Strawn LLP, which was performed by the firm's most experienced trial and tax lawyers, that resulted in the favorable tax settlement with the IRS.
>
> * * *
>
> As the lead Plaintiff in the Court of Federal Claims litigation and the Motion to Intervene in the IRS' tax claim litigation, I have taken the responsibility to keep as many shareholders informed of the litigation as possible. In this regard, I have discussed my fee arrangement with Winston & Strawn LLP with many large shareholders, such as Gary Hindes and Abe Siemens and hundreds of other smaller individual shareholders. *I can attest with certainty that I have spoken with individuals who hold over half of the shares of Benj. Franklin stock, and that they fully support Winston & Strawn LLP's fee petition.*
>
> *Considering that the FDIC has no real stake in this matter, and that its only interest is to protect the interest of the shareholders, and that the shareholders clearly support Winston & Strawn LLP's fee petition, I request that you approve the fee petition as submitted.*

Facts ¶ 38, Ex. 6 (Suess Decl.) (emphasis added).

Mr. Hindes – who manages various investment funds that, in the aggregate, constitute the largest Benj. Franklin shareholder – echoed Mr. Suess's sentiment:

> I manage various investment funds which, in aggregate, constitute the largest shareholder of Benj. Franklin.
>
> * * *
>
> As part of my involvement in this case, I have dealt extensively with the law firm of Winston & Strawn LLP. I am very familiar with the work that Winston & Strawn LLP has performed in defending the [Benj. Franklin] Receivership against the $1 billion tax claim of the IRS and in settling that claim for $50 million. *I have also reviewed carefully the Winston & Strawn LLP fee petition. I fully support that fee petition. I believe that it is quite reasonable under the circumstances. The case involved novel and complex tax issues with a most difficult adversary, the IRS.*

> \* \* \*
>
> *Considering that the FDIC's role in this matter is to maximize the benefit and minimize the losses to the shareholders, and that it is clear that most shareholders support this fee petition, I submit that the FDIC should follow the will of the shareholders, and approve it.*

Facts ¶ 38, Ex. 7 (Hindes Decl.)(emphasis added).

Finally, Mr. Siemens, who owns 346,000 shares of Benj. Franklin stock, declared under oath that, in his view, "the award of a success fee of twice Winston & Strawn LLP's normal hourly rate would be conservative and, in any event, very reasonable." Facts ¶ 38, Ex. 8 (Siemens Decl.). He added: "I believe that the FDIC made a mistake by disregarding the will of the shareholders and denying a portion of Winston & Strawn LLP's [fee] claim." *Id.*

The "will of the shareholders" should prevail. These and similarly-situated individuals, not FDIC-Receiver, will pay any fee award in this case. Consequently, as in *Swedish Hospital*, significant weight should be attached to these declarations in support of Winston & Strawn's fee petition. *Swedish Hosp.*, 1 F.3d at 1271.

    2.    **The Requested Fee Award Is Appropriate Because Winston & Strawn Incurred Risk In Agreeing To Provide Legal Services At A Substantial Discount In Return For A Success Fee If Appropriate**

As discussed above, before undertaking representation in this matter Winston & Strawn agreed to accept greatly reduced hourly fees for their work in exchange for an agreement by the Benj. Franklin shareholders to support a success fee if the claim were resolved favorably. There is no dispute that Winston & Strawn accepted payment for only one-third of its normal hourly rates when it provided assistance to FDIC-Receiver and the Benj. Franklin shareholders in connection with the Tax Case. Winston & Strawn thus assumed a financial risk because there was no guarantee that a common fund would be created in favor of the shareholders. Success fees are routinely awarded when, as here, the attorney expressly agrees to a contingency-type

arrangement under which the firm carries risk if no successful outcome were achieved. *See, e.g., McLendon v. Continental Group*, 872 F. Supp. 142, 161 (D. N.J. 1994) ("It is unlikely that a lawyer would accept the proposition that if she lost a case, she would be paid nothing, but if she prevailed, she would be paid merely her normal hourly rate."); *see also* Facts ¶ 38, Ex.6 (Suess Decl.) ("[N]o law firm would take on a matter this complicated and demanding for [a fraction] of their normal billable rates if all they were guaranteed if they were to prevail, would be their standard hourly rates."). To deny Winston & Strawn compensation for the risk it took is to deny the customary way law firms do business in these situations.[10]

The requested success fee is particularly warranted here because, in large part, that fee merely would compensate the firm for its lost time value of money. Winston & Strawn is not requesting, and did not receive, any award of interest on the remaining two-thirds of attorney's fees paid to the firm after the Tax Case was settled. Facts ¶ 36, Ex. 3 (Gill Dep. at 114:1-10). As Mr. Suess explained in his declaration, "[a]pplying a simple interest rate to their standard hourly rates in 1998 and 1999 would amount to at least twice their hourly rates today." Facts, Ex. 6 (Suess Decl.).

3. **An Attorney's Fee Award Of Only 2.8% Of The Fund Is Extremely Conservative Given Winston & Strawn's Significant Role In Negotiating The Tax Case Settlement**

Significantly, there is no dispute that Winston & Strawn added substantial value in connection with the Tax Case settlement. The FDIC readily admits in its Answer that "W&S rendered valuable services to Benj. Franklin's shareholders and the Benj. Franklin receivership." Facts ¶ 31, Ex. 1 (FDIC Ans. ¶ 44). Moreover, at the May 2, 2006 fairness hearing, the Court spoke to the results obtained and praised the efforts of counsel:

---

[10] In around 87% of all torts and 53% of all contractual issues plaintiffs retain their lawyers on a contingency basis. Playing it Safe with Low Conditional Fees versus Being Insured by high Contingent Fees, 8 Am. L. & Econ. Rev. 20 (2006)

> I applaud the efforts of everyone who participated in this, but it just struck me as quite unusual that this was accomplished without the assistance of a mediator or a retired judge or an arbitrator. The parties literally rolled their sleeves up and made this thing happen. It took a lot of time. . . . Normally it takes the experience and hard work of a disinterested third party to achieve finality. The parties were able to achieve finality themselves. *It took a lot of time. It took a lot of effort, but it does show that the process can work. So the parties have something to be thankful. The shareholders have something to be thankful for.*

Facts ¶ 24, Ex. 5 (Settlement Fairness Hearing Tr. at 20:7-13 (May 2, 2006)) (emphasis added).

Nor is there any dispute that Winston & Strawn reasonably devoted more than 1,400 hours to the Tax Case. Facts ¶ 20. To be sure, these hours resulted in a settlement that avoided litigation that would have been much more time consuming and expensive in terms of attorney's fees, and that could have left the Benj. Franklin shareholders with no receivership surplus whatsoever. Winston & Strawn presented a very strong case on a highly complicated and novel taxation theory to a very skeptical and tough audience, the IRS. The result was a significant victory for FDIC-Receiver and the Benj. Franklin shareholders – a victory that bestowed an undisputed benefit on these shareholders of at least $42 million. Winston & Strawn is entitled, as a matter of law, to be fairly compensated for that effort.[11]

---

[11] Since FDIC-Receiver does not dispute the reasonableness of Winston & Strawn's legal services in connection with the IRS claim and Tax Case (with the minor exception of fees totaling $6,639 that are not at issue in this case), Winston & Strawn has not included as part of the summary judgment record copies of its invoices submitted to FDIC-Receiver in connection with the firm's fee petition. Winston & Strawn, however, is willing to supplement the summary judgment record with these documents at the Court's request to the extent the Court deems these materials relevant to this Motion for Summary Judgment.

## **CONCLUSION**

For the foregoing reasons, Winston & Strawn requests that this Court grant Winston & Strawn's Motion for Summary Judgment and award the firm an attorney's fee of at least $574,938 over and above what already has been paid to the firm in connection with the Tax Case.

Dated: February 2, 2007

Respectfully submitted,

/s/ Thomas M. Buchanan
Thomas M. Buchanan (D.C. Bar No. 337907)
Charles B. Klein (D.C. Bar No. 450984)
Scott D. Pluta
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20001
(202) 282-5000

*Counsel for Winston & Strawn LLP*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 2, 2007, a copy of the foregoing document was served by first class mail, postage prepaid, and email upon the following:

William F. Demarest (D.C. Bar No. 266312)
Blackwell Sanders Peper Martin LLP
750 17th Street N.W., Suite 1000
Washington, D.C. 20006-3901
Phone: (202) 378-2300
Facsimile: (202) 378-2319
*Attorney for Blackwell Sanders Peper Martin, LLP and Ernest Fleischer*

James Borthwick (MO #19722)
Nancy S. Jochens (MO #49022)
Blackwell Sanders Peper Martin LLP
4801 Main Street, Suite 1000
Kansas City, MO. 64112
Phone: (816) 983-8000
Facsimile: (816) 983-8080
*Attorneys for Blackwell Sanders Peper Martin, LLP and Ernest Fleischer*

Don S. Willner
DON S. WILLNER AND ASSOCIATES
630 Sunnyside Road
Trout Lake, Washington 98650
(509) 395-2939 (Facsimile)

Bruce C. Taylor
FEDERAL DEPOSIT INSURANCE CORPORATION
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2478 (Facsimile)
Counsel for Federal Deposit Insurance Corporations,
as Receiver far The Benj. Franklin FS&LA

Kelby Fletcher
Attorney at Law
1501 4th Avenue, Suite 2800
Seattle, WA 98101
(206) 682-1415 (Facsimile)

Jeremiah A. Collins
13REDHOFF &. KAISER, PLLC
805 15th Street, NW
Washington, D.C. 20005-2207
(202) 842-1885 (Facsimile)
Counsel for Willner & Associates

/s/ Thomas M. Buchanan
Thomas M. Buchanan

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP, <br><br> and <br><br> WILLNER & ASSOCIATES, <br><br> and <br><br> BLACKWELL SANDERS PEPER MARTIN <br> and <br> ERNEST M. FLEISCHER, <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE <br> CORPORATION, AS RECEIVER FOR <br> THE BENJ. FRANKLIN FS&LA, <br><br> Defendant. | Civil Case No. 06-1120 (EGS) <br><br> [Consolidated with No. 06-1227 <br> (EGS) and No. 06-1273 (EGS)] |

## ORDER

UPON CONSIDERATION of Plaintiff Winston & Strawn LLP's Motion for Summary Judgment in the above captioned matter, the record herein and for good cause shown, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the clerk of the Court shall enter final judgment in favor of Winston & Strawn LLP and against Defendant in the amount of $574,938.

ENTERED this _____ day of _____ 2007.

_____
United States District Judge