```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

----------------------------------x
WINSTON & STRAWN, LLP, et al.,    :
                                  :
           Plaintiffs,            :
                                  :
     v.                           :   No. 06-01120 (EGS)
                                  :       06-01227 (EGS)
FEDERAL DEPOSIT INSURANCE         :       06-01273 (EGS)
CORPORATION,                      :
                                  :
           Defendant.             :
----------------------------------x
```

                                      Washington, D.C.

                              Wednesday, January 17, 2007

Deposition of

                    BRUCE C. TAYLOR

a witness, called for examination by counsel for
Plaintiffs, pursuant to notice and agreement of
counsel, beginning at approximately 1:00 p.m., at
the law offices of Winston & Strawn, 1700 K Street,
NW., Washington, D.C., before Mary Ann Payonk of
Beta Court Reporting, notary public in and for the
District of Columbia, when were present on behalf
of the respective parties:

                                                    2

1    APPEARANCES:

2        On behalf of Winston & Strawn, LLP:

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400      800-522-2382

11

1    copy?
2        A    Sure.
3        Q    All right.  On page 1 of Exhibit 7
4    at the bottom of the second full paragraph,
5    you wrote:  It appears unlikely that further
6    efforts will be successful in lowering the
7    IRS assessment of taxes, penalties and
8    interest below the projected assets of the
9    receivership assets.  What research or
10   inquiry, if any, did you make before writing
11   that sentence?
12       A    I -- if I recall correctly, I
13   discussed it with some of my colleagues who
14   were more knowledgeable of the efforts being
15   made by the FDIC to meet and discuss the tax
16   with the IRS.
17       Q    Who did you talk to?
18       A    I'm not sure whether my memory's
19   accurate, but I must have spoken with Jim
20   Eigo, who was either a colleague at the time
21   or maybe had been involved earlier.  Can't be
22   sure about that because Jim may have

2     A    I don't recall whether I read the
3  interagency agreement for these purposes.  I
4  know I've read the interagency agreement
5  before as part of other duties, but never
6  specifically for the purpose of responding to
7  anybody in particular.  And I'm almost
8  certain I did not review it for purposes of
9  responding to this, although, you know, I may
10 have.
11    Q    All right.
12    A    But --
13    Q    Do you remember a clause in the
14 interagency agreement which says that the
15 FDIC under certain circumstances surrendered
16 its right to protest any tax levied by the
17 IRS?
18    A    I don't remember that provision
19 specifically but I have no reason to doubt
20 that it is in the agreement.
21    Q    Next sentence says:  We can tell
22 you, however, that a decision may be made

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400        800-522-2382

15

1  soon on how to handle the IRS's claim in
2  light of the IRS's latest indication that it
3  does not intend to abate any portion of the

```
 9      If -- someone may have.  I don't recall.  I
10      believe I wrote that because I knew that
11      there were discussions ongoing within the
12      corporation as to how to handle IRS's claim.
13          Q    And by "the corporation," you mean
14      FDIC?
15          A    Correct.
16          Q    And there were discussions about a
17      early decision on the possibility of paying
18      the tax?
19          A    My letter seems to indicate that
20      there -- that the discussions were perhaps
21      coming to a head and -- and that whoever's
22      responsible for making the final decision was
```

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400      800-522-2382

18

```
 1      in the process of making a final decision.
 2      what that decision would have been, I -- I
 3      don't know.
 4          Q    But the decision was being made in
 5      light of the IRS's latest indication that it
 6      does not intend to abate any portion of the
 7      tax liability of the Benj. Franklin
 8      receivership, is that correct?
 9          A    That's what my letter says, yes.
10          Q    In the next sentence, you say:
11      Further, we will let you know if a payment is
```
Page 16

```
12    made to the IRS so you can advise your
13    clients accordingly.
14              And it's clear, isn't it, that you
15    meant you would give me that notification
16    after you made the payment?
17       A    That is what my letter indicates,
18    yes.
19       Q    Before writing Exhibit 7 -- pardon
20    me.  Was Exhibit 7 as a letter approved by
21    anybody else in the FDIC before you sent it?
22       A    Is Exhibit 7 my June 6th letter?
```

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400    800-522-2382

19

```
1        Q    Yes.
2        A    Okay.
3              (The reporter read the record as
4              requested.)
5        A    I'm not sure if I can give you a
6     precise answer to the question as worded.  I
7     know that John Thomas reviewed the letter,
8     which I assume for purposes of your question
9     means he approved the letter.  But there was
10    no process where I vetted the letter and had
11    people signing off and giving written
12    concurrence on that.
13       Q    Were you authorized to write
```

Page 17

14    Exhibit 7?

15    A    Yes.

16    Q    Before writing Exhibit 7, did you

17    research the impact of paying any portion of

18    the tax upon the rights of FDIC receiver or

19    the shareholders of Benj. Franklin?

20    A    I did not.

21            MR. WILLNER:  No further questions.

22            (Discussion off the record.)

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400        800-522-2382

20

1             MR. BUCHANAN:  I don't have any

2     questions.

3             MR. WILLNER:  Do you have any

4     questions?

5             MR. PLUTA:  No questions.

6             MR. WILLNER:  You have no

7     questions?

8             MR. BORTHWICK:  No.

9             MR. DeHENZEL:  We will read and

10    sign.

11            (Whereupon, at 1:54 p.m., the

12            deposition of BRUCE C. TAYLOR was

13            adjourned.)

14                   *   *   *   *   *

15

16